# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3534SD

_____

St. Paul Fire and Marine Insurance    *
Company; St. Paul Mercury Insurance    *
Company,    *
   *
           Appellants,    *
   *
      v.    *
   *
Medical X-Ray Center, P.C.; Lynn A.    *
Hendrickson, M.D.; Andrew Ian Soye,    *
M.D.; Daryl R. Wierda, M.D.,    *
   *
           Appellees.    *

_____

Appeals from the United States
District Court for the District
of South Dakota.

No. 97-3577SD

_____

St. Paul Fire and Marine Insurance    *
Company; St. Paul Mercury Insurance    *
Company,    *
   *
           Appellees,    *
   *
      v.    *
   *
Medical X-Ray Center, P.C.; Lynn A.    *
Hendrickson, M.D.; Andrew Ian Soye,    *
M.D.; Daryl R. Wierda, M.D.,    *
   *
           Appellants.    *

_____

Submitted: May 14, 1998
Filed: June 10, 1998
_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges.
_____

FAGG, Circuit Judge.

Medical X-Ray Center, P.C. (MXC), a South Dakota radiology group, was sued by a competing radiologist, Dr. Ralph Read, for tortious interference with prospective business relationships and violation of state and federal antitrust laws. A jury found for Read on two of his antitrust claims, but the verdicts for Read were overturned. See Read v. Medical X-Ray Center, P.C., 110 F.3d 543, 544 (8th Cir. 1997), cert. denied, 118 S. Ct. 299 (1997). St. Paul Fire and Marine Insurance Company and St. Paul Mercury Insurance Company (collectively St. Paul) insured MXC under general and professional liability policies. After the trial, St. Paul brought this diversity action seeking a declaratory judgment that St. Paul had no duty to defend MXC in Read's lawsuit because neither policy covered the damages Read sought. On cross-motions for summary judgment, the district court decided there was coverage under the general liability policy, but not under the professional liability policy. St. Paul appeals, and MXC cross appeals. We affirm on St. Paul's appeal and dismiss MXC's cross-appeal as moot.

We review the district court's summary judgment decision de novo. See Allstate Ins. Co. v. Burrough, 120 F.3d 834, 838 (8th Cir. 1997). In this diversity case, South Dakota law governs our interpretation of St. Paul's insurance policies. See id. Under South Dakota law, an insurer's duty to defend is much broader than the duty to pay a judgment rendered against the insured. See Bayer v. Employers Reinsurance Corp., 383 N.W.2d 858, 860 (S.D. 1986). "'An insurer must defend its insured if the

-2-

pleadings in the action against the insured allege facts which, if established, would support a recovery under the policy.'" Id. (quoted cases omitted). Any doubt about whether the claim against the insured arguably falls within policy coverage is resolved in the insured's favor. See id. at 861. To avoid the duty to defend, the insurer has the burden to show the policy clearly does not cover the claim. See id.

The general liability policy in this case provides St. Paul has "the right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person." Among other types of injury, the policy covers "personal injury," which is defined as "injury, other than bodily injury, caused by . . . written or spoken material made public which belittles the product or work of others." Thus, St. Paul had a duty to defend Read's lawsuit against MXC if any of Read's claims were for injury caused by public statements MXC made belittling Read or his work.

In his complaint, Read alleged MXC's actions sought to eliminate him as a competitor in violation of state and federal antitrust laws. Read also alleged MXC's actions amounted to intentional interference with prospective business relationships. As factual support for all his claims, Read alleged that during a medical staff meeting at a major area hospital, an MXC representative told the staff that Read's proposed working arrangement there was insufficient to meet his patients' needs. Read expanded on this allegation in his amended complaint, claiming MXC had made misleading and inaccurate statements to members of the hospital's medical staff to discourage them from choosing Read to perform radiology services. Read incorporated this allegation into his tort claim, which asserted that based on his longstanding association with the hospital medical staff, he had a legitimate expectation of providing services there, MXC intentionally and maliciously interfered with that prospective business relationship, and because of MXC's actions, Read was unable to establish the business relationship and suffered financially. To remedy the tort, Read sought actual and punitive damages.

We conclude St. Paul had the duty to defend Read's lawsuit against MXC because Read's complaints allege facts that would support recovery under the general liability policy. See Bayer, 383 N.W.2d at 860. Read's tort claim was for injuries caused by MXC's actions, including MXC's public statement indicating Read's radiology services were inferior. MXC's statement was a factual basis for Read's tort claim because MXC made the statement to hospital staff with whom Read sought a business relationship. The statement was a cause of the alleged tort injury. Thus, Read's tort claim "arguably falls within policy coverage." Id. at 861. That is enough to trigger St. Paul's duty to defend under South Dakota law. See id. It does not matter that the court dismissed the tort claim at the close of Read's case. See Hawkeye-Security Ins. Co. v. Clifford, 366 N.W.2d 489, 491-92 (S.D. 1985).

St. Paul asserts that under the plain language of the policy, a duty to defend is triggered only by a claim for covered damage, and not an isolated allegation in a pleading for which no damages are sought. According to St. Paul, there is no coverage because Read brought no defamation or trade libel claim based on the belittling statement. Neither the policy language nor South Dakota law supports this view. St. Paul cites several cases, but they are all distinguishable or unpersuasive. In Reliance Ins. Co. v. Shenandoah South, Inc., 81 F.3d 789, 792 (8th Cir. 1996), the policy covered damages resulting from "'oral or written publication of material that slanders or libels a person . . . or disparages a person's goods, products, or services.'" The plaintiff alleged the insured's negligent mismanagement of his theater "'damage[d] his reputation and good will in the community.'" Id. at 791. We held the policy did not cover the claim because the negligent mismanagement did not libel or slander the plaintiff or disparage his services. See id. at 792. In this case, the policy covers injuries caused by publicized, belittling statements. Read alleged in his complaint that MXC made a statement belittling Read's service to others at a hospital staff meeting, and this statement brought about his tort injury. Cf. Mulberry Square Productions, Inc. v. State Farm Fire & Cas. Co., 101 F.3d 414, 421 (5th Cir. 1996) (in case involving similar policy language, pleadings did not trigger insurance coverage because plaintiff's

complaint did not allege disparaging statements as factual basis for tort claims).  In Larson v. Continental Cas. Co., 377 N.W.2d 148, 149 (S.D. 1985), the court held a policy covering personal injury did not cover a racial discrimination claim against a building owner who refused to rent to the plaintiff.  In Crum & Forster Ins. Co. v. Pacific Employers Ins. Co., 907 F. Supp. 312, 314 (D.S.D. 1995), the court held the libel, slander, or disparagement coverage of a general liability policy did not encompass a wrongful termination action where the plaintiff merely alleged his wrongful termination injured his reputation.  And in Microtec Research, Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 972 (9th Cir. 1994), the court found no personal injury coverage because the plaintiff did not allege the insured made a statement that disparaged the plaintiff's reputation.  In sum, St. Paul failed to carry its burden to show the general liability policy clearly does not cover Read's tort claim against MXC.  See Bayer, 383 N.W.2d at 861.

Because St. Paul had a duty to defend Read's lawsuit against MXC under the general liability policy, and MXC stated at oral argument that the duty under just one policy is sufficient, we dismiss as moot MXC's cross-appeal asserting St. Paul had a duty to defend under the professional liability policy.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.