# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

97-3412

_____

|  |  |  |
|---|---|---|
| Robert C. Newyear, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| The Church Insurance Company, | * | District of Missouri. |
| | * | |
| Defendant/Appellee. | * | |

_____

Submitted: February 13, 1998
Filed: September 21, 1998

_____

Before LOKEN and HANSEN, Circuit Judges, and DAVIS[1], District Judge.

DAVIS, District Judge.

Plaintiff/Appellant Robert Newyear ("Newyear") commenced a declaratory judgment against Defendant/Appellee The Church Insurance Company ("Church Insurance") seeking a declaration that the comprehensive general liability policy issued to Newyear's employer by Church Insurance provides defense and indemnity

_____

[1]The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota, sitting by designation.

-1-

coverage for an action brought against Newyear by two women. The action was removed to the United States District Court for the Eastern District of Missouri. The district court[2] granted Church Insurance's motion for summary judgment, and denied Newyear's cross motion for summary judgment on the basis that Newyear was not an insured under the policy. Judgment was entered in favor of Church Insurance and against Newyear on July 30, 1997. Newyear appeals this judgment.

I.

Newyear was an Episcopal Priest of the Episcopal Diocese of Missouri from 1986 through August 1994. He was the rector at the Church of Good Shepherd located in St. Louis, Missouri. A lawsuit was filed by two women identified as "Jane Doe 1" and "Jane Doe 2", in the Circuit Court of St. Louis County, Missouri, in which the women accused Newyear of intentional infliction of emotional distress and breach of fiduciary duty (the "underlying action"). Both women allege that Newyear engaged in sexual misconduct with them over a span of years. In their Complaint, the plaintiffs allege that "Newyear engaged in a course of conduct which, in the guise of pastoral counseling of Plaintiff 1, was intended to induce her to have sexual relations with him. . . " Appendix Ex. G, First Amended Petition for Damages ¶ 13. The Complaint also alleges that "Newyear used his position as rector of the Defendant Church and counselor to parishioners to establish a relationship with Plaintiff 2 when she sought pastoral counseling." Id. ¶ 20.

Newyear commenced this action, seeking a declaration as to the rights and liabilities of the parties with regard to the Comprehensive General Liability Policy (the "Policy") issued by Church Insurance. The Policy provides for the following coverage:

---

[2]The Honorable Terry I. Adelman, United States Magistrate Judge, Eastern District of Missouri, Eastern Division.

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . .

"Insured" is defined in the Policy as:

any person or organization named as an insured, also the following additional insureds:

a. any clergyman, employee, vestryman, warden, member of the board of governors, executive officer, director or trustee of the organization while acting within the scope of his duties as such;

***

"Occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to conditions, which result in personal injury or property damage neither expected nor intended from the standpoint of the insured." The Policy also provides additional coverage for pastoral counseling liability, which provision states, "The definition of 'Personal Injury' shall include acts, errors or omissions of ordained Episcopal clergy, acting within the scope of their duties as employees of the Named Insured and arising out of the pastoral counseling activities of these individuals."

The district court found that Newyear was not an insured under the Policy because the allegations in the underlying action involved acts committed outside the scope of Newyear's employment. In reaching this determination, the district court relied on two Missouri court opinions that applied principles of agency/ respondeat superior. See Huger, 728 S.W.2d 574 (Mo. Ct. App. 1987)(priest's participation in abortion rally did not fall within the scope of priest's employment); P.S. v. Psychiatric Coverage, Ltd., 887 S.W.2d 622 (Mo. Ct. App. 1994)(employer is not liable under respondeat superior for damages resulting from an employee

-3-

psychiatrist's involvement in a sexual relationship with a patient).

On appeal, Newyear asserts that the district court erred in finding that he was not acting within the scope of his employment and was thus not an insured under the Church Insurance policy. Newyear argues that as the allegations in the underlying action relate to conduct that arose directly from his duties as a pastoral counselor, the pastoral counseling liability provision provides coverage.

## II.

We review the district court's grant of summary judgment *de novo*. Because the interpretation and construction of insurance policies is a matter of law, the issue of whether the duty to defend or indemnify exists under a policy is particularly amenable to summary judgment. Reliance Ins. Co. v. Shenandoah South, Inc., 81 F.3d 789, 791 (8th Cir. 1996).

Missouri state law governs our interpretation of the Policy. McAuliffe v. Northern Insurance Company of N.Y., 69 F.3d 277, 279 (8th Cir. 1995). Words in an insurance contract are to be given their plain and ordinary meaning. Maryland Casualty Company v. Huger, 728 S.W.2d 574, 579 (Mo. Ct. App. 1987). To determine coverage issues, Missouri law provides that courts should compare the allegations in the underlying complaint to the language of the insurance policy. Reliance Ins. Co., 81 F.3d at 791 (citing Benningfield v. Avemco Ins. Co., 561 S.W.2d 736 (Mo. Ct. App. 1978)). If the complaint alleges facts not within the coverage of an insurance policy, no duty to defend arises. Id. (citing Steve Spicer Motors, Inc. v. Federated Mutual Insurance Company, 758 S.W.2d 191, 193 (Mo. Ct. App. 1988)). "Any uncertainty as to the policy's coverage should be decided in favor of the insured." Id. at 792.

Newyear asserts that he is entitled to a defense under the Policy as the

allegations asserted in the underlying action arise out of his duties as a pastoral counselor. Newyear contends that as counseling relationships tend to give rise to a wide range of intense emotions, allegations of sexual contact or innuendo that arise from such counseling are not unforeseeable and are therefore covered by the pastoral counseling liability provision. Newyear argues that the only relevant inquiry is whether the allegations arise from pastoral counseling and that therefore the district court erred in applying principles of respondeat superior to determine whether the alleged acts of sexual misconduct fell within the scope of employment.

Newyear contends that his position is supported by this court's decision in <u>McAuliffe</u>, <u>supra</u>. In <u>McAuliffe,</u> a priest cultivated a sexual relationship with a female parishioner that the priest was counseling on personal and spiritual matters. <u>Id.</u> at 279. The issue before the court was whether the Dioceses' comprehensive general liability policy provided coverage for the parishioner's claims against the bishop of the Diocese and the priest. <u>Id.</u> at 278. The policy at issue contained an exclusion which precluded coverage for claims arising out of "the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured . . ." <u>Id.</u> at 279. Based on the record, the court held that the priest's conduct fell within this exclusion, barring coverage. <u>Id.</u> The bishop of the Diocese, however, argued that the exclusion did not apply. <u>Id.</u> In addition to other arguments proffered, the bishop contended that the exclusion was inapplicable because the priest was not acting within the scope of his employment with the Church, and thus the parishioner was not in the care of "an insured." <u>Id.</u> This argument was held to be without merit.

> Believing the Missouri courts would do the same, we reject McAuliffe's suggestion to apply respondeat superior tests because their application would essentially nullify the abuse or molestation exclusion. Under McAuliffe's approach, the more abusive a priest's acts become, the more certain it would be that the abuse or molestation exclusion would not apply. "This rationale cannot apply because [it produces] an absurdity." We conclude [the priest] was an insured within the exclusion's meaning because the parishioner was

> sexually exploited while [the priest] performed the counseling functions the church had expected him to perform as a priest.

Id. (citing All American Ins. Co. V. Burns, 971 F.2d 438, 445-446 (10th Cir. 1992)(further citations omitted)).

Contrary to Newyear's assertion, McAuliffe does not stand for the proposition that principles of respondeat superior are inapposite in the determination of coverage issues nor for the proposition that, as a matter of law, a priest who engages in sexual misconduct with a parishioner under the auspices of counseling is acting within the scope of his duties for purposes of insurance contract interpretation. To interpret McAuliffe so broadly would be to disregard the canon of insurance contract interpretation requiring courts to determine coverage by comparing the specific factual allegations to the specific policy language at issue. Benningfield, 561 S.W.2d 736. Rather, McAuliffe holds that the principles of respondeat superior should not be applied if their application would nullify any portion of the insurance policy relevant to the determination of coverage.

In this case, the Policy provides coverage for "acts, errors or omissions of ordained Episcopal clergy, acting within the scope of their duties as employees of the Named Insured and arising out of the pastoral counseling activities of these individuals." Appendix, Ex. G., p. 96, Policy p. 16 (emphasis added). Thus, to determine whether Newyear is an insured under the Policy, we must find not only that the allegations arise out of pastoral counseling but that Newyear was also acting within his duties as an employee of the Diocese when he engaged in the sexual misconduct alleged in the Complaint. If we were to accept Newyear's interpretation of the pastoral counseling liability provision, that we need only determine whether the allegations arise out of pastoral counseling, the clause "acting within the scope of their duties as employees of the Named Insured" would be rendered meaningless. On the other hand, construing the pastoral counseling liability provision to require

the determination of whether Newyear was acting within the scope of his duties when he allegedly engaged in sexual misconduct with the plaintiffs in the underlying action gives the provision meaning.  Because we find that application of respondeat superior principles does not nullify any portion of the Policy relevant to the determination of coverage, Newyear's reliance on McAuliffe is misplaced.

The Policy does not define "acting within the scope of his duties", so the district court was correct to look to Missouri law to interpret said phrase.  The Missouri Supreme Court has held that, depending on the facts and circumstances of a given case, the law of agency can be used to determine whether a priest was acting within the scope of his duties when engaged in a particular activity.  Huger, 728 S.W.2d at 579.  Under agency principles, an act is within the scope of employment when the act "was done in furtherance of the business or interests of the employer."  Id.  In applying the tests for agency/respondeat superior liability, the Missouri courts have held that a priest does not act in furtherance of the business or interests of his employer when he engages in sexual misconduct with parishioners.  In Gray v. Ward, 950 S.W.2d 232 (Mo. Banc 1997), the plaintiff became sexually involved with the defendant priest after the plaintiff began to see him for confession and counseling.  The Missouri Supreme Court held the Diocese was not vicariously liable for the priest's conduct because intentional sexual activity and intentional infliction of emotional distress do not fall within scope of a priest's employment.  Id. at 232.  See also Gibson v. Brewer, 952 S.W.2d 239 (Mo. Banc. 1997)(intentional sexual misconduct and intentional infliction of emotional distress are not within the scope of employment of a priest and are in fact forbidden.)  Similar findings have been rendered in other jurisdictions as well.  See, e.g., Tichenor v. Roman Catholic Church of New Orleans, 32 F.3d 953 (5th Cir. 1994)(priest engaging in sex with minor parishioner is not related to priest's duties nor in any way furthers the interests of the church); Byrd v. Faber, 565 N.E.2d 584 (Ohio 1991)(pastor not acting within the scope of his duties as a clergyman when he engaged in non-consensual sex with a parishioner's wife.)

Furthermore, the Missouri Court of Appeals has specifically held that sexual relations arising out of a counseling relationship do not fall with the scope and course of the counselor's employment.[3] P.S, supra. Thus, Newton's alleged sexual misconduct falls neither within the scope of his duties as a priest nor as a pastoral counselor.

Having reviewed the issues *de novo*, we conclude that Newyear is not entitled to a defense or indemnity under the Policy as the alleged acts of sexual misconduct do not fall within the scope of his employment. Accordingly, we find the district court properly granted summary judgment in favor of Church Insurance, and we affirm.[4]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

---

[3]Newyear's reliance on Zipkin v. Freeman, 436 S.W.2d 753 (Mo. 1968) is also misplaced as its holding was limited to whether claims of mishandling of the transference phenomenon were covered under the policy at issue therein.

[4]As we affirm the finding that Newyear was not an insured under the Policy, it is unnecessary to address Newyear's alternative arguments.